UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAMONT SAPP, | : | CIVIL NO: 1:16-CV-00161 |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| THE VARTAN GROUP, | : | |
| *a/k/a Vartan Enterprises*, | : | |
| Defendant | : | |

# REPORT AND RECOMMONDATION

## I. Introduction.

After reviewing the complaint in accordance with 28 U.S.C. § 1915(e)(2), we concluded that the complaint failed to state a claim upon which relief may be granted. *Doc. 11*. We granted the plaintiff, Shamont Sapp ("Sapp"), leave to file an amended complaint, but he failed to do so. *Id*. Thus, we recommend that the Court dismiss the complaint and close the case.

## II. Factual Background and Procedural History.

Sapp, proceeding *pro se*, commenced this 42 U.S.C. § 1983 case by filing a complaint and a motion for leave to proceed *in forma pauperis*. *Docs. 1*, 5. In his complaint, Sapp names Vartan Group, Inc. ("Vartan Group") as the defendant. *Doc 1*. Sapp states that he is the author of five books, including *John O. Vartan—*

*My Multi-Millionaire Lover*, which was published in 2010. *Doc. 1* at 1. Sapp asserts that he gave complimentary copies of this book to Ralph Vartan, CEO of the Vartan Group, to establish a potential business relationship with the Vartan Group through its publishing division, Beacon Press. *Id*. at 1-2. Sapp explains the book is a "tell all" of Sapp's relationship with the late John O. Vartan.[1] *Id.* at 2.

Sapp states that it is a known practice in the publishing world for the author to inform a party that he or she is writing about him or her, and in turn, the author will give the party a copy of the book to make the necessary corrections or the party's counsel will send a cease and desist letter. *Id.* Sapp asserts that the Vartan Group reached out to Sapp's publisher, Morris Publishing Company ("Morris Publishing"), asking questions regarding the business aspect of the book. *Id.* Morris Publishing refused to cooperate or answer the Vartan Group's questions. *Id.* The Vartan Group then contacted the AUSA[2] claiming that it did not like the book and that it could not get information from Morris. *Id.* Sapp states he later reached out to Morris to get more copies of the book printed so that he could gather supporters. But when Sapp contacted Morris, he was told "who wants to work with an author who has the U.S. Attorney breathing down his neck." *Id.* at 3.

---

[1] Plaintiff never specifies John O. Vartan's relationship to Ralph Vartan or the Vartan Group.
[2] While Plaintiff makes numerous references to the AUSA, we assume he is talking about the U.S. Attorney's Office. For ease of reference, we will simply refer to it as the AUSA.

Apparently, Sapp believes that the Vartan Group got the AUSA to contact Morris Publishing. *Id.* at 4. Sapp alleges that in 2011, because the Vartan Group told the AUSA to contact the publisher, the AUSA then told Morris Publishing that Sapp was attempting to extort the Vartan family with the book. *Id.* Sapp also alleges that the AUSA was asking Morris Publishing questions concerning how much Sapp was getting paid, how many copies were printed, and how many copies were sold. *Id.* According to Sapp, however, Morris Publishing declined to cooperate unless the AUSA issued a subpoena. *Id.* Sapp states that he and Morris Publishing waited for a subpoena to issue or for charges to be filed from 2011 to 2016, but that neither a subpoena nor charges were filed. *Id.* In closing, Sapp states that, under the terms of his agreement with Morris, more copies of the book could be printed if desired. *Id.*

Sapp complains that he must now find a new printing company to print copies of the book. *Id.* Sapp also complains that the Vartan Group injured his reputation and destroyed a business contract through interference. *Id.* Sapp seeks $5,000,000 in punitive damages and $5,000,000 in compensatory damages for pain and suffering and emotional distress, and tortious interference with a contract for the pecuniary losses he has sustained. *Id.*

## III. Discussion.

### A. Screening of *In Forma Pauperis* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. Specifically, we are obliged to the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) which provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal—
> (i) is frivolous or malicious
>
> (ii) fails to state a claim upon which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

Under Section 1915(e)(2)(B)(ii), the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to

relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## B. The Complaint Fails to State a Claim Upon Which Relief May Be Granted.

Sapp's complaint is brought pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The requirement that a defendant act under color of state law is essential in order to establish a claim under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Here, Sapp fails to identify any federally protected right violated by the Vartan Group. Sapp also fails to allege the threshold element of a § 1983 claim:

that the Vartan Group was acting under the color of state law when it violated Sapp's federally protected right.

Moreover, although Sapp sets forth some factual background, he fails to sufficiently allege how the Vartan Group defamed him or tortiously interfered with a contract. Furthermore, while Sapp raises claims for various types of non-monetary relief, he fails to allege sufficient facts to establish that he is entitled to such relief. In sum, the complaint fails to state a claim upon which relief may be granted.

### C. Leave to Amend.

On February 21, 2017, this Court informed Sapp of the foregoing deficiencies in his original complaint and directed him to file an amended complaint, which he failed to do. Although the order, which was mailed to him, was returned as undeliverable, Sapp, as a *pro se* litigant, had the obligation to maintain a current address with the clerk. *See* M.D. L.R. 83.18 ("Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served upon such party."). Sapp, however, has failed to do this, despite being directed to do so in the standing practice order that was sent to him

after he filed the complaint. *Doc. 3.* Thus, not only should Sapp's complaint be dismissed for failure to state a claim upon which relief may be granted, but his failure to file an amended complaint and his failure to keep the Court apprised of his address also evinces a lack of prosecution on his part.

## IV. Recommendation.

Based on the foregoing, we recommend that the complaint be dismissed and that the case file be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

9

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **1st** day of **June 2017**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Chief Magistrate Judge